172088 May it please the court. My name is Chad Dunn and I represent Richard and Janelle Simon. Citizens of the state of Louisiana. They live outside of Baton Rouge. They're farmers. For most of their adult lives they've worked in a paper mill, but Janelle Simon decided to raise horses and had an interest in it. They saved up their money and so they went to a horse show. Janelle saw something in a horse that no one else did and so they bought it. And they trained it and they fed it and they paid for the vet bills and they raced it. And it started to win. A lot. And before long they were asked to go to the biggest sporting event in quarter horse racing in the world. The All-American Futurity in New Mexico. And so it was the stuff of a Walt Disney film until it wasn't. Because the people like the Simons aren't supposed to win the biggest race in the quarter horse world. And as they ran this race, their horse came in a close second. And it was obvious that the first place horse would be awarded the win until the test results came back. And it turns out the first place horse was positive for a drug that the state had never before allowed to exist in a horse and let it retain its position in race. So the stewards, the umpires of racing, did their duty. Three of them met as a panel in the days following the race. And they'd done as they had done in every case before. And they disqualified the first place horse because it had violated the rules of the state of New Mexico. Because it had violated the fundamental tenets of horse racing. And so it was that Richard and Janelle Simon had a horse that had won the biggest race in the world. No, it hadn't won because that wasn't a final decision. The final decision was after the Racing Commission had decided. So all they had done was had cleared the first hurdle toward winning if the final commission approved, which, of course, they didn't. So that's not quite an accurate statement, I don't think. Well, we don't agree with the premise that the rules are clear, that the stewards' decision on the race finish can be overturned. So I would have to – Where do you get the authority that the commission can't overturn that? Because the rules that are in effect that apply to this race give the stewards the right to award the race finish. And the rules say that finish is final, at least with respect to the parimutuel wager pool. And the rules state that explicitly. In fact, it's at 15.2, .6, .9c that the rule tests are final at the stewards' level. Now, it is true – You keep adding the at the stewards' level. But the way I read this, it was quite clear that the commission had the final right of appeal, a final right of decision. And they exercised that right. The commission has the final right of appeal as to the licensure issues with respect to the person charged with the violation. So in this case, the disciplinary proceedings. Instead, what it did here was a process it had never done before. It went out and appointed three hearing officers. So you are saying that the rules are clear that the commission does not have the authority to overturn the stewards' decision about who wins the race. That's clear with respect to the parimutuel wagering pool. There's no question about that. But we're not talking about the waging pool at this point. The rules are not clear as to whether they can overturn the race. The waging pool is a different group of people. They're not parties here. We're talking about the declaration of the winner for the horse owner. I understand Your Honor's position. I just have to disagree that the rules are clear on that point. Well, it's one thing to say they're not clear. I agree with you on that. It's a different thing to say that it is clear that the commission can't overturn it. And I thought that was what you were saying. You're now saying it simply is unclear. Yes. And I meant to say that in my estimation it's unclear. And I apologize to the court if I haven't done so. I won't quarrel with you about that. Is there anything in the rules that would indicate that they can't overturn the disqualification? Not explicitly, Your Honor. So what's your position about why they can't? Our position is the U.S. Supreme Court says that citizens like ours who are seriously injured by government action are entitled to a hearing. They're entitled to participate in a hearing. In fact, if the stewards have no— Okay. Well, I'm trying to come at—what I'm kind of coming at you is what's the basis for your property interest? The property interest is that the rules of racing explicitly state that if there's a positive test, there's no tolerance for it, and the test is—and the horse is disqualified. But they allow—that's the steward, and they very clearly say that's a prima facie. That's prima facie evidence, which means that that can be rebutted. So it's not final, and they also allow for an appeal, which is what happened here. I guess I just don't see anything about the rules that would support the position that somehow that's a—the steward's determination is final. Well, the—I don't believe— And the paramutual provision has nothing to do with this. Let's start with Goldberg v. Kelly, the U.S. Supreme Court case in 1969. That case has to do with whether or not individuals had a right to a contested hearing as to whether they were entitled to welfare benefits. In that case, it wasn't a—and there was an argument in that case. This whole issue of does the stewards count or is it the later hearing that triggers it was addressed directly by the Supreme Court in the 69 case. And in Goldberg v. Kelly, the Supreme Court relied on the fact that there was no discretion because the claimants in that case, if they had satisfied the requirements, they would automatically be entitled to AFTC payments, correct? That's not how I recall the facts, Your Honor. I believe there was a degree of discretion in the case as to whether— in fact, the Supreme Court said that the plaintiffs in Goldberg were actually probably not eligible for welfare benefits, but they were nevertheless entitled to a hearing. Well, let's take a case of ours substantially after the Goldberg case, Martin Marietta Materials v. Kansas Department of Transportation. In that case, didn't we specify post-Goldberg that the test is whether or not following the procedures would require a particular outcome? That—well, but that case was followed up by the Jacobs—I'm sorry, the Crown Point 2003, I believe, case that says the question is whether there's some limit to the discretion. And so there can be discretion, according to this Court. There just has to be some limit to it. And what the Supreme Court says, and this Court has cited numerous times, is that as long as there is a path, a history, or an understanding is actually, quote-unquote, an understanding is the term, and that's what happened here. Never before has the Racing Commission done this. Never before has somebody allowed a positive test and allowed that horse to be the first place. Well, how often does it come up? I beg your honor? How often does it come up? Ms. Johnson, who testified in this case as the investigator for the Racing Commission, had been there approximately six years, had been in 20 cases involving positive tests, and nearly every one of them they alleged contamination like they did here. And she testified at the record that in every one of those cases that the panel didn't find contamination, didn't find mitigating circumstances, and outlawed the horse or reordered the finish. That's at the record, appellant's appendix, at 1318 and 1316. So this is the first time ever. I'm confused. You had a right to a state court review of the Racing Commission's decision, as I understand it, and I may be wrong, I'm asking the question so you can correct me, but didn't you take an appeal, essentially an appeal filed in a state court case, to review that, and then dismissed it? Am I correct on that? And if so, my question is, why did you dismiss it? Why didn't you pursue your state action? I have several responses. First, is it a true observation? It's true that the third time they went to the state court, they filed an appeal of the ruling that they were excluded from, and then they ultimately did not pursue it. Did they appeal from being excluded from the final commission's deliberations, or did they file a challenge to the conclusions that the Racing Commission reached? Both. Okay, so in the state court, they challenged both the procedural due process and the substantive decision. No, because none of the claims were based on federal constitution. No, I know that, but I mean, they were challenging the decision of failure to disqualify, and they were challenging the procedure that they were denied a seat at the table. There's three different cause numbers. In the first cause number, they asked to be a part of the proceedings. The commission said no. They filed a state court proceeding. The state court said, your request is premature because the commission hasn't made a decision. Put that aside. Put the premature aside. Let's go to the next. The next time they appealed, after the commission officially ruled they couldn't participate, the state court ruled that the Simons could not participate in the state court hearing of the special three panel because they said it was a quasi-criminal process involving only the license holders, in this case the trainers, license and suspension. So the state court said it was criminal and you have no right to be a party to that? Yes, sir, as a matter of fact. Did they appeal that decision to the state appellate court? They did not. Why? Because at that point, it was apparent that they were not going to prevail, and in any event, the question that they wished to present was a federal constitutional question, and it was their right to bring that case in federal court. Well, a federal constitutional question depends on what your state rights are, and the state court could have positively decided that. The state court could have decided the state law issue? I agree with that. No, the state of whether they have a property right. Judge Moritz was asking about that, and I think I'm concerned about it as well. You could have gotten a state court decision on that. Well, they could have raised their federal claims in state court. They didn't. They chose to have them adjudicated in federal courts, and this court has said time and again in due process cases that it's appropriate for federal courts to preserve their jurisdiction and citizens can choose to ask the federal court to adjudicate their federal rights. The only issue ever presented to the state courts was the state court issues. Well, I don't mean to be a dead horse, but I do want to follow up because I'm not. How much did you plan that for me? Well, strike that for the record. But I do want to follow up because I'm not sure that I understood how your answer pertains to Judge Abell's question, and that is the question that I have, and I think it's similar to Judge Abell's, is if the New Mexico Racing Commission said that the Simons didn't have a right to intervene in these proceedings, then the Simons could have appealed to court, and they could have appealed that administrative adjudication. And so if they could have done that, perhaps the state district court would have said, you know, the New Mexico Racing Commission was incorrect, the Simons did have a right to participate, and so they could have exercised their rights to be involved in this ultimate determination of whether Solis winner should be disqualified. And if that were the case, then assuming that whether or not there was a property interest, there would have been process that was provided because they would have ultimately been able to participate in the administrative proceedings if they would have been vindicated by appealing to the state district court. I definitely can concede all those ifs could have been possibilities. The point is that they had state rights they were pursuing in state court. It was apparent after every step at that point that the hearing was going forward without them, and so they elected to pursue their federal court rights in federal court. Well, it's not just an if. If they had the opportunity for post-deprivation, which is what we're talking about, due process, through the appeal process of the agency's determinations, then they had an opportunity for due process, and by waiving that, they've waived that right. And so it's more than just speculation. You had that opportunity. In fact, you actually appealed but didn't prosecute it. They dismissed for lack of action. I understand you're on this position. I just respectfully disagree that's the law. The Goldberg case says- Well, post-deprivation due process can be sufficient, and I guess I'd like you to address why this wouldn't have been sufficient here. Because the cake was baked. It wasn't baked. This is an appeal process. You could have appealed, and they could have turned around not only the decision to exclude your clients. They could have said they did have standing, and they should have been participants at the hearing, so you would have had the procedural aspects of the due process, and they could have turned around the substantive decision, so it wasn't baked. You had a full appeal process, post-deprivation due process. An abuse of discretion process completely limited to the record that was incredibly false and omitted numerous pieces of evidence. Whether you think it's baked or not isn't our consideration, though. I'm asking you why that post-deprivation due process wasn't sufficient, assuming you had a property interest. Because the state court procedures and the limited record that existed made it impossible for the Simons to prevail. In just the few minutes I have left, I'd also like to focus on the private party claims. The district court determined that there were private party causes of action recognized both in the common law in the state of New Mexico. The private plaintiffs didn't cross-appeal that issue, so the remaining issue is whether or not the district court's use of the incorrect rulebook was the right benchmark to decide the summary judgment issue. Let me ask you a question about one of those state causes, and that is the implied private right of action under the New Mexico regulations. The defendant did not move for summary judgment on that ground, correct? That's right. And you filed a motion for summary judgment, and in your written motion for summary judgment, you didn't argue for summary judgment on that ground, correct? That's true. And so in Judge Browning's order, he says, and I think it's on page 110 if I'm not mistaken, that you raised that argument for summary judgment at the hearing. That you argue at the hearing on the cross motions that you were entitled to summary judgment on the implied cause of action under the New Mexico regulations, correct? Well, yes, on the liability part. I guess where I got confused is we hadn't argued, re-argued the national trust issue. Right. So the only time in district court that the issue that anybody would be entitled to summary judgment on this state cause of action for the implied private right of action under the New Mexico regulations was at the hearing in which you specifically argued for a right to summary judgment on the issue, right? I believe that's true. I mean, it had been decided on motions to dismiss, so it was the law of the case at that point. That it survived. But we're not here on an appeal for the motion to dismiss. Exactly. Correct. Okay. So the only place is in this mysterious transcript that Judge Browning cited. Is the transcript in your appendix? It's not. Is the transcript in the district court record? I'm not aware. It's not, as I recall. So we are essentially being called to determine whether your appeal on this state cause of action should be overturned when there's not a single syllable in any accessible record to us in the appendix, or even if we go outside the appendix and scour the district court record, there's not one iota of discussion of anybody's entitlement to summary judgment on the New Mexico cause of implied private right of action, correct? Well, it was in the briefing. I know it was in your briefing. Okay. Usually you have to, you know, have something in the record to support it. You know, for example, show that it's preserved to show that. So anyway, that's my question. I'm not sure I caught the question. I'm sorry, Your Honor. Well, how can we adjudicate your appeal point on that issue when there's not a syllable in the accessible record on the existence of an implied private right of action under the New Mexico regulations? Because there wasn't any evidence taken in the transcript, so it's on the briefing. It's on the motion for summary judgment papers and the evidence attached there. But nobody argued for summary judgment on the New Mexico private right of action in the papers, correct? Yes. We moved for summary judgment on our private right of action. You did? Yes. Are you sure about that? I remember writing it. Okay, because Judge Browning said you didn't. I didn't see it in your written papers. Well, if it's acceptable to the court, I'll check the record and file a letter brief. Well, seek leave of court before you file any supplemental briefs. Understood. All right. Thank you. We'll give the appellee two minutes and 40 seconds additional. Thank you, Your Honors. May it please the court. My name is Nicholas Saito. I'm here on behalf of the New Mexico Racing Commission and its commissioners. There are two brief issues that I would like to discuss with the court. First, the New Mexico regulations that provide any claim to a protected property interest. Would you mind, before you get into that, just because, Judge Becker, I could raise the question of what's in the record about whether a motion for summary judgment was filed and whether it was briefed and argued. You heard that discussion. I'm quite confused at the moment. Can you elaborate any on what the record before us shows? Unfortunately, Judge Ebel, I believe that Mr. Blackburn would better be able to address that issue because he represents the private appellees. And will he be given? Are you splitting your time? Yes. Okay. Yes, Your Honor. All right. So to establish a protected property interest, the plaintiffs must find some state law or other existing rules that entitle them to property. And the New Mexico Racing Commission's regulations are clear that a purse is not awarded and a party is not entitled to a purse until after any appeal of the administrative ruling of the stewards. Now, plaintiffs, both in their reply brief and here at oral argument, cite to a provision of the regulations. It's 15.2.3.8B6B, which says the stewards' ruling is final for the purposes of the distribution of the parimutuel pool. But this is different than the purse. This is the pool of money that's wagered by people at the horse race. And the reason why the stewards' ruling is final for the purpose of that pool is that they need to pay out winnings to people attending the horse race in short order. They don't want to wait until an administrative appeal process is concluded. But the purse is different. And the Mr. Dunn claimed that there's some ambiguity in the regulations about when a party is entitled to the purse. But the regulations are not ambiguous. First of all, there's a section of the regulations. It's 8D4E we cite in our brief, that a purse is only paid out once an appeal of the stewards' ruling is concluded. If the Racing Commission could not reverse the stewards' ruling regarding an entitlement to a purse on appeal, there would be no need to wait to award the purse until after the appeal is concluded, which that provision provides. Additionally, the way in which the stewards can change the entitlement to a purse from the first place horse to another horse is through disciplinary action against the first place horse's trainer or owners. And that disciplinary action under the regulations is expressly subject to appeal. So if you have a disciplinary action that results in the purse being taken away from the first place horse, then that disciplinary action and the ruling by the stewards can be appealed. And the taking away of the purse as enforcement of a disciplinary action is not final until that appeal is concluded. Can you address 15.2.38? D4E? No. B3K. Purses, prizes, awards and trophies shall be redistributed if the stewards or commission order a change in the official order of finish. So here the stewards did order a change in the official order of finish, correct? That's correct. And it says or. Does that suggest that if the stewards order a change, which happened here, the proceeds shall be redistributed? That's mandatory. Does that suggest that the commission can change that order? I think that one. How do you read that, I guess? I read it together with other provisions in the regulation that make clear both that the stewards' order is subject to an immediate stay, which is what happened here on the same day that the stewards' order was issued, and that the purse. And there is a provision that specifies that, the immediate stay? Yes. I don't have it before me, but it's in our briefing. Yes. And then that the purse, even if the purse can be awarded by the stewards, that it's not paid out, that there's not an entitlement to the purse in a particular party until an appeal has been concluded. Despite this language that it shall be redistributed if the stewards order a change? Yes, because I read that together with language saying that the purse shall, you know, be distributed at this particular time within 48 hours of the appeal being concluded. The second issue that I wanted to address was just to briefly clear up some of the administrative procedural history in this case and the plaintiff's repeated attempts to go to state court. So there was first plaintiff's filed a motion to intervene in this disciplinary action against the trainer, the quasi-criminal proceeding, and that motion was denied by the Racing Commission. Plaintiffs filed, actually filed two writs, petitions for writs of certiorari to the New Mexico State District Court. The first was denied as premature. But in the second, the court heard that appeal and denied, affirmed the Racing Commission's ruling not permitting that intervention. So that decision on the motion to intervene was specifically ruled on by the state court, which is why we make our Rooker-Feldman argument. And then that was not appealed further to the state's appellate courts. There's a third petition for writ of certiorari that plaintiffs filed after the Racing Commission made their ruling. And they made, again, these due process – they made due process claims, as they assert in their complaint, saying that they had a due process right to participate in the commission hearing. That was denied, and the court – the state district court should review the commission's ultimate ruling. And the state district court granted – granted certiorari in that case, ordered the plaintiffs to file an opening brief in state district court, and plaintiffs never did so. And so the appeal, the administrative appeal, was closed for lack of prosecution. If plaintiffs had pursued that appeal, they both would have been able to argue that the Racing Commission's ultimate ruling was wrong, and they could have sought a remand to the Racing Commission for further proceedings, whether it's a right of intervention or some sort of new proceeding that Judge Browning suggested, even if their right of intervention is barred by Rooker-Feldman. They said there might be some sort of free-floating proceeding that due process entitled them to. They could have made that argument in the state district court on certiorari. I'm still a little confused, I guess. So you said that they'd already appealed and lost on the issue of their right to intervene. Am I misunderstanding? They did, and that's why we make a – So didn't they already exhaust as far as that issue? Yes, I believe so. I suppose I'm addressing the possibility that Judge Browning raised that they have some sort of – that they have some sort of free-floating proceeding independent of the quasi-judicial or quasi-criminal administrative proceeding that is not barred by Rooker-Feldman. But they could have made that argument on this administrative appeal in the district court that they abandoned. I'll reserve the rest of my time. What was the claims that they asserted in the district court action that they eventually abandoned? What were the claims raised by them? They were seeking review of the Racing Commission's ruling reversing discipline. So they were not making constitutional claims in that matter? They claimed that they made constitutional claims in the original motion to intervene in the disciplinary action. Well, that's not a good answer. You said they claimed it. Did they or did they not make constitutional claims in their pleadings in the state district court? In the motion – they claim in their complaint in this action that they made constitutional claims in their motion to intervene. I know they claim it here. My question is, did you review those pleadings in the state court, and did they or did they not assert constitutional claims? The pleadings in the state court are not all available in the record. And – but they claim in their complaint that they made – So if you can't – if the record before us does not state what was in those claims, then your answer is we can't tell from the record before the 10th Circuit. What I can tell you is that in Plaintiff's federal court complaint, they claim that in the administrative – in the state court appeal of the administrative proceeding, they made constitutional claims. So that's their own history of the proceeding, and they claim that they made a due process claim there. Reserve the rest of my time. May it please the Court, my name is Billy Blackburn, and I represent the private defendants in this case, the Windhams, Mr. and Mrs. Windham, Jerry Windham and Pat Windham, and the trainer in this case, which is Heath Taylor. So I was in this case from the beginning because I appeared before the stewards hearing. So as you've already heard, there was a hearing before the stewards, which is just sort of a preliminary hearing to determine whether or not that there was some violation of the rules. It was a very informal proceeding. It was set forth in the rules. The rules of evidence really do not apply. It is a very informative type hearing, but you're allowed to cross-examine people. The stewards made a ruling. This is like three or four months after the test comes back positive from Louisiana State and from Iowa State, and they made a preliminary ruling that there was a positive test and that Mr. Taylor – nothing to do with the owners in this case. The owners were never brought up for any disciplinary hearing. That Mr. Taylor would face six months suspension, a fine, and the purse would be redistributed. So therefore, the second place horse became first. The million dollars would then – and everybody would move up. If you got third, you went to second and all the way down because this is the world's largest quarter horse race. It lasts about 21 seconds, and everybody that races in the finals gets a piece of the action. If you finish last, you get a certain amount. As a result of that, though, there was an automatic appeal and a stay of all of that. There was procedures that were followed by the defendants, well, by Mr. Taylor, that he was allowed to appeal the alleged violation, the fine that he received, and the redistribution of the purse. Automatic appeal, stay – the stay was granted, and the appeal is a de novo appeal in front of a commission. You can either go – the rule is allowed to go in front of the commission themselves, or they can appoint a hearing officer. In this case, because of the nature of the case – this is the world's largest quarter horse race – there was an issue about giving back a million dollars to my clients, or the owners of that, and the executive director of the racing commission appointed a three-judge panel. Two lawyers from New Mexico, from Albuquerque One, who is a sports referee and does sports refereeing, or used to – he can't run up and down fast anymore. You're kind of running out of time. What's your – can you get to the point? What particular issue are you wanting us to – Well, I was just trying to explain that in this whole process, the Simons did request in front of this three-judge panel that they be allowed to participate. And there was a hearing, it was briefed, and they ruled that under the rules, that if the state, who was – it's a New Mexico racing commission – if the state was adequately represented, and they were represented by the attorney general's office, and unless they could show somehow that the state was not adequately representing or the racing commission was not representing their rights, they did not have standing to do that, to participate. The three-judge panel made that ruling. It went to the commission. The commission had another hearing. Everything goes to the commission. Anything done by the hearing officers has to be reviewed. Goes to the commission. The commission said no. Does the commission review de novo, or do they review under some deferential standard? They review just based upon the record that is presented in front of them. They don't – Do they get – is it a new record presented in front of them, or do they review the record below? They just review the record that is presented to the hearing panel. So it is not a de novo review. No. And what presumptions do they give to the original decision? It's like an abuse of discretion to the panel. Okay. So anyway, that is the same thing that happens as it relates to the disciplinary action. There was a three-day hearing, four-day hearing. The state of New Mexico represented the racing commission. Evidence was presented. Evidence was presented by all sides. Then there was findings of facts, conclusions of law, arguments, tons of pleadings that are before this court that have been generated based upon the – the hearing officers made a recommendation that there was no violation, that any presumption was rebutted because of environmental contamination based upon three or four issues that are in the record. That was then appealed – or that recommendation goes back to the racing commission, the five members of the racing commission that are appointed and know the laws of the state of New Mexico concerning racing, and they review that, again, for abuse of discretion. They review everything. They have the right to overturn it. You're out of time. So wrap up your point, and then I want you to – I'm amazed. That was the question that we alerted you to that we were interested in. Before you ever got up, you've used your entire time, and you haven't even responded. Well, I was going to – You don't have any more time, but he's asked you to answer. Could you just answer that question, please? Sure. The – there was a motion to dismiss. The motion to dismiss was filed by the private defendants as to whether or not there was a private cause of action that they could bring this. The court ruled against the – ruled against this on the Rule 12b-6 and said that it found that there was sort of an implied right. Nothing was ever done with that. When the plaintiffs came before the court, they never filed a motion for summary judgment on that issue. They filed their own motion for summary judgment for what was in their complaint. When it came before the court for a hearing – Can I stop you? Don't lose your train of thought, but I just want to make sure that my memory is correct. You filed four summary judgment motions, and yours didn't address the implied private right of action on that. That's right. Okay. No, they didn't. Okay. No. Keep going. And for the first time, this came up in front of the hearing, as you stated, when we were in front of Judge Browning for this argument on the summary judgment motions. And it was at that point in time, for the first time it was raised, and you said there's no transcripts, it was never briefed on those issues. The only briefing that came up was based upon the fact that the judge made a ruling on that in his summary judgment motion on page 110 or 117 or whatever it was, but there was never any argument or there was never any briefing on the lower court below on those issues. And there's no record of that. So I guess that's the answer to your question. I'm sorry. Thank you. Thank you very much. We'll give you – out of fairness, we're going to give you two minutes and 40 seconds, although I hope I don't end up doing this for every one of our cases or we'll never get out of here. Thank you, Your Honor. I'm Chad Dunn again on behalf of the appellants. I went and checked the record in response to Your Honor's question. Plaintiffs moved for summary judgment on each of their private causes of action. The brief starts at appellant's appendix at 1084, and the discussion on each of the causes of action and the evidence to support each element thereto starts at appellant's appendix 1112. And then, of course, the documents, depositions, and other evidence to support that motion for summary judgment are attached thereto. Was this an oral motion or was this a written motion that you're referring to now? It's a written motion for summary judgment. A written motion that we have in the record before us. Yes, sir. It starts at 1084, and the main section begins at 1112. Right. Look, the Constitution, as the Supreme Court and this Court have said time and again, when it comes to due process, gives a right to be heard. At the end of the day, a million-dollar purse was awarded initially to my clients and then taken away by the government. And despite numerous efforts, 10 years' worth of effort, they've yet to be heard on it. The New Mexico Racing Commission paid out the purse in violation of that rule, Judge Moritz. It had already left the building. The state had every interest in making sure this thing was papered over the way it was. And all the Simons are asking for is an opportunity to be heard. Maybe the commission decides again that it was all right and this is still going to be the first time that a positive test result is going to be forgiven in the biggest race in the country. But at least they can be heard. At least they can hear from the lab personnel that say there was no contamination. All right. Counselor, you're over time, but let me ask you one question of what you started with. I've got your motion for summary judgment. So where in your motion for summary judgment, or is that the pages that you were referring to in the appendix? Yes, sir. In your written motion for summary judgment, where did you address this issue? 1112. 1112. Okay. Thanks. We walk through each of the claims and say here's what the state law elements to the claims are and here's what the evidence to support them is. All right. Thank you very much. Thank you. This matter will be taken under advisement.